

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00373-CV

**CHARLES MICHAEL TUCKER**
**AND LISA MARIE TUCKER,**

                                         **Appellants**

 **v.**

**FIRST AMERICAN TITLE CO. OF TEXAS-HOUSTON,**
**A/K/A CENSTAR TITLE INSURANCE CO., FIRST**
**AMERICAN TITLE INSURANCE COMPANY-HOUSTON,**
**A/K/A CENSTAR TITLE INSURANCE CO., AND FIRST**
**AMERICAN TITLE INSURANCE COMPANY-CLEBURNE,**
**A/K/A CENSTAR TITLE INSURANCE CO.**

                                         **Appellees**

---

**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. C200600480**

---

## MEMORANDUM OPINION

---

Charles Michael Tucker and Lisa Marie Tucker sued First American Title Co. of

Texas-Houston, a/k/a Censtar Title Insurance Co., First American Title Insurance

Company-Houston, a/k/a Censtar Title Insurance Co., and First American Title

Insurance Company-Cleburne, a/k/a Censtar Title Insurance Co. ("First American").[1] The parties entered a mediated settlement agreement. In one issue, the Tuckers contend that the trial court's final order is not in strict compliance with the settlement agreement. We affirm.

A final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292 (Tex. 1976). Modifications to settlement agreements are typically grounds for reversal, however, only where they add terms, significantly alter the original terms, or undermine the intent of the parties. *Beyers v. Roberts*, 199 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

The settlement agreement provides: (1) First American shall pay the Tuckers $107,000 cash "upon return of its previous check[s] in the sum of $4,853.00 and $8,047.00" and pay the funds "as soon as possible and on or before May 15, 2008"; (2) the Tuckers "shall execute a compromised [sic] settlement agreement and dismissal documents prepared by First American"; and (3) the "[p]arties agree to execute any and all necessary documents to effectuate [] the intent and terms of this agreement." A dispute arose regarding First American's proposed settlement documents. The Tuckers returned the checks to First American. First American tendered the settlement funds to the Tuckers' counsel, but requested that the funds be held in trust pending resolution of the disputes concerning the settlement documents. First American later filed a motion to enforce the agreement, and the Tuckers filed a motion to approve the agreement.

---

[1] The Tuckers also sued other parties who are not involved in this appeal.

At a hearing, the trial court ordered the parties to sign the Tuckers' proposed settlement documents. The Tuckers asked the trial court to "consider setting a time frame, a deadline, to get…a release all signed by everybody and I think also it would be appropriate to order that I be allowed to release the settlement funds and take that cloud and that condition off of the delivery of the funds to me." The trial court granted the later request and then asked the parties whether a fourteen-day time frame would be sufficient. First American's counsel replied, "He's got the originals in his possession. If he will have his clients sign those and forward them to me, upon his sending them to me, I have no objection to his releasing the check or releasing the funds." The trial court replied, "Fair enough."

> The proposed order approving the settlement agreement stated:
>
> IT IS FURTHER ORDERED that the settlement funds as defined in the mediated settlement agreement shall be immediately disbursed to Plaintiffs.

The trial court's final order modified this provision:

> IT IS FURTHER ORDERED that the settlement funds as defined in the mediated settlement agreement shall be [] disbursed to Plaintiffs *upon Defendant's receipt of the executed release from Plaintiffs*.

The Tuckers filed a motion to modify. At a hearing, they argued that the modification "contradicted the terms and provisions of the Mediated Settlement Agreement."[2] The trial court denied the motion.

---

[2] Counsel further argued that the modification was contrary to provisions of the insurance code. That issue has not been raised on appeal.

On appeal, the Tuckers argue that return of the two checks was the only condition for payment of the settlement funds and that the trial court's modification imposed a new condition.

In *Cobb v. Morace*, No. 01-07-01036-CV, 2009 Tex. App. LEXIS 5753 (Tex. App.—Houston [1st Dist.] July 23, 2009, no pet. h.) (mem. op.), Cobb refused to sign formal settlement documents after reaching an agreement with Morace. *See Cobb*, 2009 Tex. App. LEXIS 5753, at *5. Cobb challenged the final judgment's compliance with the mediated settlement agreement. *Id*. at *10. He complained, in part, that "although the MSA required Morace to begin making quarterly payments to Cobb on May 9, 2007, the judgment did not require that the quarterly payments begin until '90 days after the judgment' became final." *Id*. at *12. The First Court held, "Although the trial court modified the date on which the quarterly payments to Cobb would begin, this modification did not significantly alter the original terms of the MSA or undermine the intent of the parties:"

> Pursuant to the MSA, Morace should have begun sending quarterly payments to Cobb on May 9, 2007, ninety days after the parties had signed the MSA. However, Cobb had refused to execute settlement documents drafted by Morace. As a result of this and other disputes, the trial court incorporated the MSA into its judgment and required that Morace begin making payments ninety days after the judgment became final instead of ninety days after the MSA had been signed. However, the trial court did not alter the amount that Morace owed, the frequency of the payments, or the "interest rate of 5.75% per annum" on the payments.

*Id*. at *13-14.

Like *Cobb*, the trial court in this case did not alter the amount or the time of the payment itself. The Tuckers had already returned the two checks to First American and

First American had tendered the settlement funds. The trial court's modification is consistent with the parties' discussion regarding disbursement of funds and a deadline for signing of the settlement documents.[3] We cannot say that the trial court's modification significantly altered the original terms of the mediated settlement agreement or undermined the intent of the parties. *See Beyers*, 199 S.W.3d at 362; *see also Cobb*, 2009 Tex. App. LEXIS 5753, at *13-14. We overrule the Tuckers' sole issue and affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed October 28, 2009
[CV06]

---

[3] The Tuckers maintain that they made two separate requests at the hearing, the trial court ruled on their request to allow disbursement of funds, and the trial court inquired about their request for a deadline. They argue that the trial court did not overturn its previous ruling and, if it intended to do so, failed to do so with sufficient clarity to place them on notice. We disagree. First American's counsel made it clear that he had no objection to release of the funds upon delivery of the settlement documents to him. The trial court's response indicates acceptance of this request. This exchange was sufficient to place the Tuckers on notice of the trial court's understanding regarding the disbursement of funds.